UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DONNELL LAMAR HANNAH,

                Petitioner,              Case Number: 00-10204-BC
                                         Honorable David M. Lawson

v.

BARBARA BOCK,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

        The petitioner, Donnell Lamar Hannah, a state inmate at the Saginaw Correctional Facility in Freeland, Michigan, has filed a *pro se* amended habeas corpus petition pursuant to 28 U.S.C. § 2254. The petitioner pleaded guilty in 1998 to one count of first-degree criminal sexual conduct. Mich. Comp. Laws § 750.520b(1)(a). The trial court sentenced the petitioner to a prison term of twenty to thirty-five years. The petitioner seeks an evidentiary hearing and contends that he received ineffective assistance of trial and appellate counsel. The respondent urges the Court to dismiss the habeas claims as untimely filed and procedurally defaulted. The Court will deny the petition for lack of merit in the grounds presented.

I.

        In 1997, the petitioner was charged in Wayne County, Michigan with three counts of first-degree criminal sexual conduct, for which the maximum sentence is life imprisonment, and one count of second-degree criminal sexual conduct, which carries a maximum sentence of fifteen years in prison. *See* Mich. Comp. Laws § 750.520c(2). On May 20,1998, the petitioner pleaded guilty to one count of first-degree criminal sexual conduct. *See* Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration with a person under the age of 13). In return, the prosecutor agreed to dismiss

the other three charges and the trial court agreed to sentence the petitioner within the sentencing guidelines.

At the sentencing hearing held on June 18, 1998, the trial court determined that the sentencing guidelines score yielded a minimum sentence of ten to twenty-five years. The trial court sentenced the petitioner within the guidelines to a minimum term of twenty years and a maximum term of thirty-five years in prison.

With the assistance of new counsel on appeal, the petitioner then filed two post-conviction motions: (1) a motion to withdraw his guilty plea on the ground that his trial attorney induced him to plead guilty by making false promises of leniency; and (2) a motion for new trial on the ground that the prosecution had breached an agreement not to interrogate the petitioner during a polygraph examination. The trial court conducted an evidentiary hearing on the motions on December 18, 1998. On that same date, the court denied the motion to withdraw the guilty plea and adjourned the hearing on the motion for a new trial so the parties could gather additional information and trial counsel could testify regarding the circumstances surrounding the polygraph test. On the adjourned hearing date, February 12, 1999, trial counsel Marvin Barnett and the prosecutor on the case, Kathleen Reno-McClory, testified about the agreement to conduct a polygraph test. At an additional hearing held on March 12, 1999, the petitioner and the Detroit police polygraph examiner, Andrew Sims, testified to what occurred during the polygraph test. On April 9, 1999, the trial court denied the motion for new trial, concluding that there was no prosecutorial misconduct and the petitioner voluntarily gave his statement to Investigator Sims.

The petitioner applied for leave to appeal to the Michigan Court of Appeals in June of 1999. He alleged that his sentence was disproportionately severe and that the trial court had erred when

it denied his post-conviction motions. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Hannah*, No. 220247 (Mich. Ct. App. Aug. 6, 1999).

The petitioner then filed an application for leave to appeal in the Michigan Supreme Court where he argued that: (1) trial counsel's failure to appear at the polygraph examination resulted in a coerced confession; (2) his guilty plea was the product of ineffective assistance of trial counsel; and (3) appellate counsel was ineffective for failing to assert a claim of ineffective assistance of trial counsel. On February 29, 2000, the Michigan Supreme Court denied leave to appeal because it was "not persuaded that the questions presented should be reviewed" by that court. *People v. Hannah*, 461 Mich. 970, 609 N.W.2d 189 (2000).

On June 1, 2000, the petitioner initiated this habeas action alleging ineffective assistance of trial and appellate counsel. On July 19, 2001, this Court dismissed the petition without prejudice because the petitioner had not exhausted state remedies for his claims by raising them in both state appellate courts. *See* 28 U.S.C. § 2254(b)(1)(A) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). On August 3, 2001, the Court vacated its order of dismissal and allowed the petitioner to request leave to return to state court to seek relief. On September 26, 2001, the Court entered an order abating this case pending exhaustion of the petitioner's claims in state court. The Court ordered the petitioner to file an amended petition within thirty days of the conclusion of state court proceedings.

The petitioner then filed a motion for relief from judgment in the state trial court asserting ineffective assistance of trial and appellate counsel. On October 29, 2001, the trial court denied the petitioner's motion on the ground that the petitioner had not shown good cause for failing to raise

his claims on appeal and actual prejudice as a result of the irregularities alleged in his claim for relief, as required in Michigan Court Rule 6.508(D)(3). The petitioner appealed the trial court's decision without success. On February 26, 2002, the Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Hannah*, No. 238417 (Mich. Ct. App. Feb. 26, 2002). On September 30, 2002, the Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions presented should be reviewed. *People v. Hannah*, No. 121269 (Mich. Sept. 30, 2002).

The petitioner signed and dated his amended habeas corpus petition on December 12, 2002. The petition raises the same claims that the petitioner presented to the state court on collateral review of his convictions:

> I.    Trial counsel's failure to appear and protect Mr. Hannah's constitutional right against self-incrimination during a defense-requested polygraph test resulted in a coerced confession and was conduct in violation of the Fifth and Sixth Amendment[s] to the United States Constitution.
>
> II.   Mr. Hannah's plea of guilty to criminal sexual conduct in the first degree was the product of ineffective assistance of counsel.
>
> III.  Mr. Hannah was denied effective assistance of appellate counsel where counsel failed to raise *inter alia* the issue regarding ineffective assistance of trial counsel.

The respondent contends that the petition is untimely and the petitioner's claims are procedurally defaulted.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas

corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

-5-

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The respondent argues in her answer to the amended habeas petition that the habeas claims are barred from substantive review because the petitioner did not file his amended habeas petition within thirty days of exhausting state remedies for his claims. Although the Court did order the petitioner to file his amended petition within thirty days of exhausting his state remedies, an exception to the thirty-day rule may exist when the record offers a reason for delay. *See Palmer v. Carlton*, 276 F.3d 777, 781-82 (6th Cir. 2002). The petitioner alleges that the forty-two day delay in filing his amended petition was due to an institutional transfer and his inability to obtain legal assistance. Furthermore, the Court has been holding this case in abeyance for the entire time that it took the petitioner to exhaust state remedies and return to federal court. The Court, therefore, will excuse the petitioner's failure to return to federal court within thirty days of exhausting state remedies.

B.

The respondent also argues that the petitioner's claims are procedurally defaulted because the petitioner did not raise his claims on direct review and the trial court denied relief on that basis. The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Application of the cause-and-prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted

-7-

in the conviction of one who is actually innocent." *Rust v. Zent,* 17 F.3d 155, 162 (6th Cir. 1994); *see Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state-procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001); *see also Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state-procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. Finally, the procedural default must rest on an "adequate and independent" state ground. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

In this case, it appears that a state procedural rule was in place during the relevant time, namely that a Michigan court will not grant relief upon a motion for relief from judgment if the grounds for relief in the motion could have been raised on appeal from the conviction or in a prior motion. *See* Mich. Ct. R. 6.508(D). The Sixth Circuit Court of Appeals has held that Rule 6.508(D) is an independent and adequate ground for procedural default. *Howard*, 405 F.3d at 477; *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

However, it appears that the Michigan courts did not enforce the procedural rule in this case. In determining whether a petitioner's claims are procedurally defaulted, federal courts must look to the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).

The trial court reviewed the petitioner's claims and determined that they were barred from review pursuant to Michigan Court Rule 6.508(D)(3). Rule 6.508(D)(3) generally prohibits state

-8-

courts from granting relief from judgment if the defendant could have raised his claims on appeal from the conviction. The trial court's reliance on Rule 6.508(D)(3) was a sufficient explanation for this Court to conclude that the order was based on a procedural bar. *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir.), *modified on other grounds*, 35 Fed. Appx. 402 (6th Cir. 2002). However, the Michigan Court of Appeals subsequently reviewed the petitioner's claims and determined that they lacked merit. *See People v. Hannah*, No. 238417 (Mich. Ct. App. Feb 26, 2002). This Court believes that the Michigan Court of Appeals may have silently disregarded the procedural bar and considered the merits of the petitioner's claims. The Sixth Circuit has interpreted a form order by the Michigan Court of Appeals or the Michigan Supreme Court denying a motion for relief from judgment because a defendant has "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," as an "explained" state court judgment denying the motion for relief from judgment on a procedural ground. *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004); *Luberda v. Trippett*, 211 F.3d 1004, 1006 (6th Cir. 2000). The order in the present case, although brief, was remarkable for a denial of a motion for relief from judgment because it explicitly stated that the appeal was denied "for lack of merit in the grounds presented" and did not rely on the procedural bar established by Michigan Court Rule 6.508(D). Although the state appellate order was only one sentence in length, it arguably was a reasoned decision. *See Munson*, 384 F.3d at 314. The Michigan Supreme Court's subsequent discretionary denial of leave to appeal was neither explained nor a judgment. *Ylst*, 501 U.S. at 805-06. Accordingly, the Court rejects the respondent's procedural default analysis. The Court will proceed to address the petitioner's claims on the merits.

III.

A.

The first habeas claim alleges ineffective assistance of trial counsel. The petitioner contends that defense counsel failed to: (1) protect his Sixth Amendment right to counsel when he neglected to attend the polygraph examination; (2) investigate the circumstances of the polygraph examination, move to suppress the admissions made during the examination, and request an evidentiary hearing on the voluntariness of his admissions; and (3) advise the petitioner of an alternative to pleading guilty.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688; internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must

-10-

show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Strickland*, 466 U.S. at 687.

The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  The first prong of the test remains the same. *Ibid.*  However, the prejudice  requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  *Id*. at 59.  In other words, the defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Ibid.*; *see also Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003).

1.

The petitioner alleges that his trial attorney deprived him of his Sixth Amendment right to counsel by not attending the polygraph examination.  The petitioner argues that minimum standards of practice require at least that defense counsel provide substitute counsel.

Defense counsel testified at the post-conviction evidentiary hearing that he arranged for a polygraph examination because the petitioner had maintained his innocence.  Defense counsel explained that he had made an oral agreement with the prosecutor and the police that there would be no interrogation of the petitioner before or after the polygraph examination.  He said that in his mind, this agreement eliminated the need for him to be present to represent his client during the encounter with the police interrogator.

-11-

Predictably, the polygraph interrogator questioned the petitioner before and after the test was administered, and, perhaps less predictably but certainly foreseeably, the petitioner confessed to the crime when confronted with the unfavorable test results.  However, when assessing the performance element under *Strickland*, it is not sufficient to observe merely that because the petitioner made damaging admissions to the polygraph examiner, defense counsel arguably should have been present at the polygraph examination to protect the petitioner's rights.  An assessment of the attorney's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.  Nonetheless, there can be little doubt that sound practice requires a defendant's lawyer to be present when a post-arraignment interrogation is scheduled to occur.  It is inconceivable that competent defense counsel would conclude that his client could soldier through on his own.

The State argues that defense counsel's "understanding" that no questioning would occur justifies his strategic decision to be absent and excuses his presence under the circumstances of this case.  That argument must be rejected.  As the Supreme Court has explained, "[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There was no strategic advantage to be gained from not attending the session, and the decision not to appear and provide some level of representation cannot be characterized as anything but unsound.  The Sixth Circuit emphasized the point of this first-element *Strickland* inquiry in *Clinkscale v. Carter*, 375 F.3d 430 (6th Cir. 2004):

> With respect to the first prong of *Strickland*, the state relies upon the conclusion of the district court (and the magistrate) that Clinkscale failed to present sufficient evidence to rebut the presumption that his attorneys' failure to file a timely alibi notice was part of a "sound trial strategy."  *Strickland*, 466 U.S. at 689.  What that

> conclusion fails to recognize, however, is that even if Clinkscale's attorneys subjectively believed that failing to file an alibi notice on time was in some way strategic – which is doubtful – such a "strategy" cannot, under the circumstances presented in this case, be considered objectively "sound," *id*., or "reasonable."

*Clinkscale*, 375 F.3d at 443 (citation and footnote omitted).

Nor could the petitioner's attorney reasonably have believed that no questioning would occur before and after the administration of the test. The polygraph interrogation procedures should be well known to the garden-variety criminal practitioner. Those procedures have been explored in the published decisions. For instance, in *Barrera v. Young*, 794 F.2d 1264 (7th Cir. 1986), a petitioner confessed to the polygraph examiner during some preliminary questioning before the polygraph examination was to take place. At the time, the petitioner's attorney was waiting just outside the door of the room where the examiner and the petitioner were talking. The Seventh Circuit found that the petitioner's statement was voluntary and that he validly waived his Sixth Amendment right to counsel. *Id*. at 1271. Concluding that it did not matter whether the polygraph examiner actually intended to administer a polygraph examination, the court made the following observations about the expectations of the petitioner and his attorney:

> Every polygraph examination begins with a preliminary discussion. . . . What matters is that Barrera and his lawyer knew that they were consenting to Anderson's questioning; they also knew that at least some of the questioning would precede the use of the polygraph machine, and that if Barrera should confess during this questioning the state would think it had struck gold. What happened to Barrera was within the range of expectations about what *would* happen to someone who consented to a polygraph exam.

*Barrera*, 794 F.2d at 1272.

Post-examination questioning is commonplace as well. In *Wyrick v. Fields*, 459 U.S. 42, 46 (1982), a case with facts quite similar to the present case, the Supreme Court explained that the

petitioner took the polygraph examination under instruction from his lawyer, who did not attend. Although the Court did not mention an ineffective assistance of counsel argument, the Court noted:

> The Court of Appeals stated that there was no indication that Fields or his lawyer anticipated that Fields would be asked questions after the examination. But it would have been unreasonable for Fields and his attorneys to assume that Fields would not be informed of the polygraph readings and asked to explain any unfavorable result.

*Wyrick*, 459 U.S. at 47. The Supreme Court ultimately held that the police questioning following the polygraph examination did not violate the petitioner's Fifth Amendment right to have counsel present during interrogation. *Id*. at 48-49.

The Court concludes in this case that state trial counsel's failure to accompany his client to a post-arraignment police interrogation at which a polygraph test was to have been administered "was not a reasonable strategic decision entitled to deference." *Moss v. Hofbauer*, 286 F.3d 851, 865 (6th Cir. 2002) (finding unreasonable defense counsel's reliance on the cross-examination of an eyewitness by a co-defendant). Rather, it constitutes performance that falls below the level of objective reasonableness under prevailing professional norms.

Although deficient performance has been established, however, the petitioner is not entitled to habeas relief because prejudice has not been shown. Certainly, his confession at the polygraph examination was a key factor in the petitioner's decision to plead guilty. He testified at the state evidentiary hearing that he pleaded guilty because trial counsel advised him, reasonably, that he had no chance of prevailing at trial once he made the incriminating statement. But it was not his counsel's advice that was the turning point in the petitioner's trial-day change of mind; it was his own confession, which may have occurred regardless of his counsel's misbegotten decision to forego attendance at the interrogation.

-14-

The petitioner does not allege that his counsel was ineffective for allowing the petitioner to *submit* to the polygraph examination. Given the petitioner's protestation of innocence and the apparent possibility of a dismissal of the charges without a trial following a truthful statement of innocence, the decision to recommend the test to the petitioner cannot be considered objectively unreasonable conduct by defense counsel on this record. As noted above, every polygraph session begins with a pre-test conversation, usually between only the examiner and the subject. Other attendants, such as attorneys, remain in another room readily available for consultation but not observing the actual encounter. The same is true of the post-test announcement of the results. The attorney's presence is required by good practice so that the defendant can seek advice if needed, and so that the attorney can act as a buffer between his client and overbearing police tactics. In this case, there is no evidence that the petitioner sought advice or complained about his inability to do so. Nor does the petitioner suggest that the police exploited his inferior intellect or otherwise threaten him. The question whether the attorney's attendance would have resulted in no confession is pure speculation. Moreover, because the statement was found to be voluntary, the choice to confess lay solely with the petitioner.

The incriminating statement, therefore, was the result of both counsel's error and the petitioner's willingness to talk. In that regard, the effect of counsel's error is distinguishable from a trial error or an error in interpreting a plea agreement: if counsel errs at trial or gives the petitioner bad advice regarding a plea, counsel has failed in doing something that the petitioner could not do for himself. Here, the petitioner managed to deny any wrongdoing during the polygraph examination but ultimately confessed to the crime when the examiner told him he had failed the examination.

Under these circumstances, the Court must conclude that the petitioner has not carried his burden of showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The petitioner has acknowledged that it was the incriminating statement that impelled him to plead guilty. Because the statement was voluntary, there is no "reasonable probability" – that is, "a probability sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694 – that the petitioner was prejudiced by his attorney's error.

2.

The petitioner alleges next that his attorney should have investigated the circumstances of the polygraph examination to determine whether the petitioner's confession was voluntary. The petitioner asserts that he was coerced and tricked into making a confession and that he was not advised of his constitutional rights to remain silent and to have counsel present.

The petitioner further alleges that, following an investigation, defense counsel should have advised him of the possibility of moving to suppress the petitioner's admissions. The petitioner contends that defense counsel should have requested an evidentiary hearing on the voluntariness of the petitioner's admissions rather than advise him that a negotiated plea was his only course of action. He alleges that his attorney's failure to move to suppress his statements and request an evidentiary hearing was not due to strategic considerations, but due to his attorney's mistaken belief that the petitioner's statement to the polygraph operator was admissible.

The circumstances surrounding the petitioner's polygraph examination and subsequent confession were revealed in a series of post-conviction hearings. At the petitioner's evidentiary hearing on the issue of prosecutorial misconduct involving the taking of his statement, the petitioner,

-16-

his court-appointed trial attorney, the prosecutor, and the polygraph examiner testified.  Defense counsel testified that he arranged to have the petitioner take a polygraph examination on the day before trial.  He testified that he had made an oral agreement with the prosecutor and the police that there would be no interrogation of the petitioner before or after the polygraph examination.  It was understood that counsel would not be present.  When he arrived at court for trial the next day, defense counsel heard that the petitioner had failed the polygraph examination and made an incriminating statement to police.  He testified that he thought that the petitioner's admissions to the polygraph operator were admissible in evidence and that, in a case such as this, where there was a confession and where the witness needs no corroboration, he felt constrained to recommend a guilty plea.  He testified that the petitioner made the decision to plead guilty after defense counsel advised him that he had no hope of prevailing at trial if his statement was admitted into evidence.

The prosecutor testified that she could not recall any agreement between the petitioner's counsel and the prosecution regarding the polygraph test.  She testified that she was present when defense counsel talked to police on the phone about the polygraph arrangements, but she could not say to whom he was speaking or what was said.  She discovered that the petitioner made an incriminating statement when she arrived at court for trial, and she never saw the statement or the polygraph results.

The petitioner testified that he and Investigator Sims talked a little about their families before the polygraph test.  He testified that during the test, Sims first told him that he was doing well, but then began to tell him that he was failing the test.  He said that Sims also advised him that he was facing a sentence of twenty years or life imprisonment if he was found guilty.  Sims allegedly discussed with the petitioner whether certain jurors would be less likely to believe him.  Sims

allegedly offered to talk with the assigned judge and the probation officer so that they would go easy on the petitioner if he made a statement.  The petitioner testified that Sims also discussed the difference in assistance provided by retained and appointed attorneys and expressed surprise that the petitioner was willing to go all the way to trial with an appointed attorney.  The petitioner testified that Sims then told him what to write in his statement and helped him spell some of the words.  When he went to court the next day, the petitioner said, his counsel told him that he had hurt himself by making the statement and advised him to plead guilty.

The petitioner testified on cross-examination that before the polygraph examination, he had maintained his innocence.  His attorney had asked him if he would like to take a polygraph examination, and he had agreed to take the test.  He knew at the time that he was going to trial soon after the examination, and he had been told about an agreement for a sentence of eight to fifteen or twenty years.  The petitioner had an eleventh grade education, and he was the manager of a Valvoline oil change station.  When questioned by the trial court, he admitted that he wrote out his statement and read it before signing it.  He said that he had not known that his appointed attorney supposedly was considered one of the best criminal defense attorneys in the state.  He claimed, nevertheless, that he had heard that appointed attorneys do not put the same amount of effort into a case as a retained attorney does.

Officer Sims testified at the hearing that many defendants confess during the course of a polygraph examination and that he had a 92% confession rate.  He noted that he advised the petitioner of his constitutional rights and his right not to take the test.  Sims admitted that he informed the petitioner he was not telling the truth and that he had to tell the detective that the petitioner failed the test.  Sims explained:

-18-

> I asked him if he wanted to try to get this straight and explain to the detectives what happened, his side of it, so I could go out there and talk, or did he just want to go to court. It's up to him. But you failed the test. And now my job is already done. And I know you failed. And I need to go tell the detective. I don't know if you want to try to get this straightened out. It's up to you.

Hearing Tr., 3/12/1999, at 55-56. Sims denied promising to talk to the trial judge in the petitioner's behalf. He admitted asking the petitioner if he had an attorney but denied telling him that a court-appointed attorney would not work as hard for him as retained counsel. He had informed the petitioner that if he wanted to tell Sims what happened, Sims would tell the investigator. The petitioner then told Sims what had happened. Sims left the room so that the petitioner could write his statement. Sims denied telling the petitioner what to write and did not recall helping him spell words like "penis." Id. at 58. Both Sims and the prosecutor who was assigned to try the case testified that there was no agreement with defense counsel to limit the scope of the polygraph examination or the questioning.

At the close of the hearing, appellate counsel read the confession into the record, just as it was written:

> MR. MAGIDSON: Okay.
> "Carlton and Howard suck my penis. I, Donnell, need counseling. Please help me. I'm sorry for layings."
>
> THE COURT: Spell the word.
>
> MR. MAGIDSON: L-a-y-i-n-s.
> "I'm a fair to go to jail."
> Fair is f-a-i-r.
> "Me, Donnell, is a good hearteit . . ."
> H-e-a-r-t-e-i-t.
> ". . . person. I suck Carlton an . . ."
> An, a-n.
> ". . . Howard penis."
> And penis is spelled correctly in both cases.
> Signed Donnell Hannah and dated and timed.

And then below to the left signed by Andrew Sims, Investigator.

Hearing Tr., 3/12/1999, at 61-62.  The trial court found that the petitioner's confession was knowingly, intelligently, and voluntarily made.  The court held:

> Based on the record in it's entirety, the witnesses who testified during the time of this motion, and a review of the appropriate case law, the Court is not convinced at all based on the information before the Court that there has been – there was any prosecutorial misconduct, or the defendant was denied any rights, nor was there anything to indicate the defendant did anything other than knowingly and voluntarily make the statement he made to the operator.  There were no promises made.

Hearing Tr., 4/9/1999, at 7.

Because the trial court heard the available evidence and found that the petitioner's confession was voluntary, there is no reasonable likelihood that the petitioner would have prevailed on this issue if his counsel had moved to suppress it or sought an evidentiary hearing prior to the guilty plea on the grounds that it was not voluntary.  Furthermore, the petitioner was not entitled to the exclusion of the statement on Fifth or Sixth Amendment grounds.  As noted earlier, in *Wyrick v. Fields*, the Supreme Court held that a petitioner's Fifth Amendment right to have counsel present during an interrogation was not violated where the petitioner made inculpatory statements after he was told he failed a polygraph test.  The Court held that the petitioner in *Wyrick* initiated interrogation by requesting a polygraph examination, and new *Miranda* warnings were not necessary merely because the polygraph examination had concluded.  *Wyrick*, 459 U.S. at 47.  Moreover, "an accused who is admonished with the warnings prescribed by [the Supreme] Court in *Miranda*, 384 U.S. at 479, has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one."  *Patterson v. Illinois*, 487 U.S. 285, 296 (1988).  The trial court determined that the petitioner was given his *Miranda* warnings prior to the polygraph test.

-20-

Although both elements of the *Strickland* test must be satisfied before a constitutional violation can be found, a court need not analyze the competence element if the petitioner fails to show prejudice. *See Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004). The petitioner has failed to show prejudice on this aspect of his ineffective assistance of counsel claim.

3.

The petitioner claims that he would have insisted on going to trial had defense counsel informed him of the possibility of filing a motion to suppress the admissions. However, because there is not a reasonable likelihood that the motion to suppress would have succeeded, the petitioner would have been faced with the choice of proceeding to trial with the admission of the confession or pleading guilty as he did. In that event, counsel's advice to plead guilty is objectively reasonable. Three of the counts against the petitioner carried minimum sentences of twenty years to life. The petitioner reaped the benefit of a guilty plea that yielded a possible minimum sentence of ten to twenty years. Moreover, the petitioner's affidavit suggests that the petitioner pleaded guilty based on his understanding of what the minimum sentence would be. He states that he would have insisted on going to trial, regardless of his admissions to the polygraph operator, if he had known then what his sentence ultimately would be.

The Court concludes that defense counsel's alleged failure to investigate and his decision not to file a motion to suppress did not prejudice the defense. The confession was found to be voluntary, which was a reasonable conclusion by the state court judge. The petitioner eventually would have faced a decision whether to plead guilty or proceed to trial in light of this highly damaging evidence even if a motion were filed. There is no evidence that he would have made the decision any differently. There is no evidence that the petitioner's sentence violated the plea

-21-

agreement.  The petitioner is not entitled to habeas relief on the basis of his claim of ineffective assistance of trial counsel.

B.

The petitioner next claims that his appellate attorney was ineffective for failing to raise the issue of trial counsel's deficient representation.  A court evaluating a claim of ineffective assistance of appellate counsel should consider several factors to determine whether counsel's performance fell below an objective standard of reasonableness, including:

1.  Were the omitted issues "significant and obvious?"
2.  Was there arguably contrary authority on the omitted issues?
3.  Were the omitted issues clearly stronger than those presented?
4.  Were the omitted issues objected to at trial?
5.  Were the trial court's rulings subject to deference on appeal?
6.  Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7.  What was the appellate counsel's level of experience and expertise?
8.  Did the petitioner and appellate counsel meet and go over possible issues?
9.  Is there evidence that counsel reviewed all the facts?
10. Were the omitted issues dealt with in other assignments of error?
11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999); *see also Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006).  Appellate counsel need not raise every nonfrivolous argument on direct appeal, but he or she must exercise reasonable professional judgment.  *Joshua v. DeWitt*, 341 F.3d 430, 441, (6th Cir. 2003) (citing *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983)).  When ignored issues are clearly stronger than those presented, the presumption of effective assistance of appellate counsel is overcome.  *Id*.  A petitioner is prejudiced by appellate counsel's deficient performance if a reasonable probability exists that, but for counsel's deficient performance, he would have prevailed on appeal.

-22-

1.

The petitioner alleges that his appellate attorney knew about the petitioner's dissatisfaction with trial counsel's unwillingness to challenge the polygraph confession. He suggests that appellate counsel should have asserted on appeal that trial counsel's failure to file a motion to suppress the petitioner's admissions amounted to ineffective assistance.

Although appellate counsel did not allege that trial counsel was ineffective for not moving to suppress the admissions, appellate counsel did attack the circumstances leading to the petitioner's admissions. He claimed that the prosecution violated the petitioner's Sixth Amendment right to counsel and breached an agreement not to interrogate the petitioner. The appellate court was unpersuaded by appellate counsel's argument. Furthermore, appellate counsel was not ineffective for failing to raise this claim because the claim is without merit, as noted above. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003). Appellate counsel's failure to raise this issue did not constitute ineffective assistance and did not prejudice the appeal.

2.

The petitioner suggests that his appellate attorney also should have raised claims about his trial attorney's unexplained absence at the sentencing and his trial attorney's promise that the trial judge would impose a minimum sentence of eight years. Appellate counsel *did* raise a claim based on false promises of leniency. Although he did not style the claim as ineffective assistance of counsel, the record does not support a claim that trial counsel made false promises of leniency.

At the plea hearing, all of the parties acknowledged that the terms of the plea agreement specified that the petitioner would receive a sentence within the sentencing guidelines. The petitioner acknowledged the terms of the plea bargain before pleading guilty, and he assured the trial

-23-

court that no other promises had been made to him.  Trial counsel confirmed his understanding that the minimum sentence under the guidelines would be eight to twenty years.  In addition, trial counsel attempted to clarify the sentencing terms for the petitioner, leading to this exchange at the plea hearing:

> THE COURT: And you understand my Cobbs evaluation where I indicated guidelines sentence only?
>
> MR. BARNETT: Yes. And I want the record to reflect that means the Court could impose a sentence, a minimum sentence anywhere between the minimum and maximum of that [sic] guidelines.  I want the defendant to know that.

Plea Tr., 5/20/1998, at 8.  At the sentencing hearing, the sentencing guidelines calculation yielded a minimum sentence of between ten and twenty-five years.  The attorney standing in for the petitioner's regular defense counsel objected, but ultimately was overruled.  The petitioner was sentenced within the guidelines to a prison term of twenty to thirty-five years.  A thorough examination of the record reveals that the petitioner was sufficiently informed of the possible duration of his sentence.  Therefore, appellate counsel was not deficient in failing to assert that trial counsel promised the petitioner a minimum sentence of eight years.

The petitioner's claim that his defense was prejudiced by the presence of substitute defense counsel at the sentencing likewise is without merit.  The substitute attorney challenged the scoring of the guidelines and asserted the petitioner's position that there had been a discussion at the plea proceeding about the minimum sentence being eight to ten years.  Because the petitioner's claims about substitution of counsel at sentencing and the promise of a minimum sentence have little merit, appellate counsel was not ineffective for failing to raise these claims.  *See Willis*, 351 F.3d at 745.

V.

-24-

The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 25, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 25, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS